# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DOUGLAS G. HICKS,

      **Petitioner,**

   v.          **Case No. 13-CV-1325**

RANDY HEPP,

      **Respondent.**

## ORDER

### INTRODUCTION

 Douglas Hicks was convicted of repeated sexual assault of a minor in Oconto County Circuit Court and sentenced to serve twenty-five years in prison. He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, contending that his trial counsel, K. Richard Wells, rendered ineffective assistance by not moving to suppress inculpatory statements made during a recorded telephone conversation and by not objecting to the prosecutor's closing arguments. Respondent filed an answer and now asks the court to deny Hicks's petition. In accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have all consented to the full jurisdiction of a magistrate judge. (ECF Nos. 19, 20.)

# BACKGROUND

In April 2005, Hicks's former stepson, E.J., reported to police that Hicks sexually abused him over a period of several years beginning in 1996 when E.J. was eleven years old. (ECF No. 17-13 at 147-49; 17-14 at 4-5, 9.) In February 2006, Investigator Dale Janus arranged for E.J., by then an adult, to call Hicks over the telephone. (ECF No. 17-15 at 8-9.) The aim was to obtain inculpatory statements from Hicks. (ECF No. 17-15 at 9.) E.J. called Hicks from the police station as investigators listened to and recorded the conversation. (ECF No. 17-12 at 11-12.) Janus instructed E.J. how to conduct the conversation, including how to elicit an incriminating statement. (ECF No. 17-15 at 9-10.)

During the forty-three-minute phone call, E.J. tried to get Hicks to apologize for molesting him. (ECF No. 17-15 at 10-11.) In doing so, E.J. made a variety of threats, which Hicks has categorized as threats of death or bodily injury, general threats of negative consequences, threats of continued harassment, and threats to tell Hicks's biological son (Hicks has a biological son with E.J.'s mother) about the sexual abuse. (*See, e.g.*, ECF No. 17-6 at 11-15.) Notwithstanding the various threats, Hicks repeatedly denied having abused E.J. (*See, e.g.*, ECF No. 23-1 at 11.) Near the end of the conversation, the following exchange occurred:

> [E.J.:]    You're going to ruin [Hicks's son's] life if you don't answer me.
> If you don't answer me [he] is never, if you don't answer me
> right now I'm going to tell [him] and [he] is going to know that
> I'm telling the truth.

2

| | |
|---|---|
| **[Hicks:]** | **You would** |
| [E.J.:] | All you need to do, yes I would to protect him from you because I should have been brave enough to do it when it first happened to me but I didn't understand then. All you need to do is say you're sorry. Say you're sorry and we can all go back to this being like normal and you will never hear from me again and there'll never be any more problems like this, and I'll play ball with it and keep things the way you want them whenever another investigation like this pops up because I'm sure there's, you know more children that you want to molest. |
| **[Hicks:]** | **[E.J.], I am sorry.** |
| [E.J.:] | You're sorry for what, come on, go forward, you're sorry for what. |
| **[Hicks:]** | **Just, you just told me to say it, I'm sorry.** |
| [E.J.:] | No say I'm sorry for sexually molesting you. This isn't going to end until you reach that point. We got the sorry part out now we just need to end the sexually molesting me part. |
| **[Hicks:]** | **That's going to keep you from uh, trying to upend, upend on [my son?]** |
| [E.J.:] | Yes it will if you want to see you[r] child again, if you don't want him to ever know about this you're going to say it. You're going to say [E.J.] I'm sorry for sexually molesting you. |
| **[Hicks:]** | **[E.J.], I'm sorry for molesting you.** |

(ECF No. 23-1 at 20-21.)

In June 2006 Hicks was charged with repeated sexual assault of the same child, a violation of Wisconsin Statute Section 948.025(1). Before trial, the State asked the court to rule on the admissibility of the phone conversation between Hicks and E.J. (ECF No. 17-12 at 3-4.) The Circuit Court for Oconto County conducted an evidentiary hearing. (ECF No. 17-12.) At the hearing, Attorney Wells did not object to the admissibility of the phone conversation. The court concluded that, based on the totality of the

3

circumstances, Hicks's statements were voluntary and not coerced and, as a result, the phone conversation was admissible. (ECF No. 17-12 at 38.)

At a jury trial, E.J. testified in graphic detail about the sexual abuse to which he was subjected by Hicks beginning in 1996 when Hicks was E.J.'s step-father. (ECF No. 17-13 at 147-150; ECF No. 17-14 at 1-6.) In total, E.J. estimated that Hicks sexually abused him on over 100 occasions during a roughly three-year period. (ECF No. 17-14 at 4-6.) In addition, Hicks's ex-wife (and E.J.'s mother) testified that in 2006, after only recently learning from E.J. about the sexual abuse, she confronted Hicks, who admitted to her that he had sexually abused E.J. (ECF No. 17-14 at 69-70.)

Two other witnesses testified that Hicks also sexually assaulted them as children. (ECF No. 17-13 at 114-15, 134-35.) Hicks admitted that he was charged with felonies for sexually molesting those two witnesses, charges that resulted in a hung jury. (ECF No. 17-15 at 143.) Hicks subsequently resolved those charges when he entered into an *Alford* plea, *see North Carolina v. Alford*, 400 U.S. 25 (1970), to two misdemeanor charges. (ECF No. 17-15 at 144-46.)

Regarding the recorded telephone conversation between E.J. and Hicks, Investigator Janus testified at trial that he told E.J. before the phone call that "there wasn't anything he could really say wrong. Whatever he felt he needed to say was okay." (ECF No. 17-15 at 26.) Hicks testified that he attempted to end the call at least ten times and that he felt threatened by E.J. (ECF No. 17-15 at 165.) When asked why he

ultimately apologized to E.J., Hicks testified that once E.J. "start[ed] suggesting something toward my son, to use my son as a tool to get what – that was it. I told him what he wanted to hear." (ECF No. 17-15 at 171-72.) In response to a question from Wells as to whether he felt threatened by E.J. during the phone call, Hicks testified, "Yes." (ECF No. 17-15 at 165-66.)

In the prosecutor's closing argument, he referred to the prior charges of child sexual assault against Hicks and asked the jury whether that prior plea deal was "a fair resolution [for] what happened? Plea bargaining it down to a couple of misdemeanors. Is that what should have happened here or should we deal with this case?" (ECF No. 17-16 at 108.) Wells did not object to this argument or move for a mistrial.

In his closing argument, Wells stated, "And I want you to think about what you heard in that tape. What you heard in that tape is what went down. It was threatening. It was mean spirited. It was horrible. And there were multiple denials of anything by Mr. Hicks." (ECF No. 17-16 at 89.) A little later, "And if you don't think that there were threats and denials and tough conversations while Mr. Hicks is coming back from a training run in his diesel truck with a co-employee, then I guess I didn't understand the nature of that particular tape." (ECF No. 17-16 at 91.) And finally,

> What about the tape that you heard of the February 6, 2006 conversation between [E.J.] and Mr. Hicks? It was filled with ranker and denial and threats and innuendo. It even goes so far as to suggest that placement with the person he loves most in the world, [his biological son], is going to be interfered with.

5

And think now for a moment about what was going on for Mr. Hicks when [E.J.] calls him up and starts talking to him in a threatening manner about purported sexual assaults which he denied which he said didn't take place, et cetera, et cetera, and the sheer panic that's going on for him knowing how easy it was to get him convicted of something in Brown County on the basis of just statements from [the two other witnesses]. Panic.

And so did he want to get off the telephone with [E.J.]? You better believe it. Was he forced into saying something like I'm sorry because that's what [E.J. forced him to say? And I don't have any respect at all for pieces of a transcript that can be pulled out and said, well, look, here he says he's sorry for the sexual assaults. The whole tape has to be listened to as a whole.

(ECF No. 17-16 at 99-100.)

The jury found Hicks guilty, and the court sentenced him to twenty-five years in prison. (ECF No. 17-1.)

Hicks moved for post-conviction relief, alleging that Wells rendered ineffective assistance by not moving to suppress the phone conversation and by not objecting to the prosecutor's closing argument. (*See* ECF No. 17-5 at 1-2.) At the post-conviction hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 804, 295 N.W. 2d 905 (Ct. App. 1979), Wells testified that he thought Hicks's statements during the phone conversation were "totally voluntary" and that Hicks admitted to him prior to the trial that he did not feel threatened by E.J. (ECF No. 23-2 at 11.) Hicks testified that he told Wells that he *did* feel threatened—specifically, after E.J. mentioned that he would tell Hicks's biological son that Hicks had sexually abused him. (ECF No. 23-2 at 78, 81.) The trial court denied Hicks's motion for post-conviction relief, finding that Hicks's statements

6

during the phone conversation were voluntary and that Wells's failure to object to the prosecutor's closing argument was a reasonable strategic decision. (*See* ECF No. 17-5 at 2.)

Hicks appealed his two ineffective-assistance-of-counsel claims. (ECF No. 17-2 at 38-41.) (The parties refer to this appeal as *Hicks I*.) The Wisconsin Court of Appeals rejected Hicks's claim that Wells was ineffective by not objecting to the prosecutor's closing argument, holding that the failure to object was a reasonable strategic decision. (ECF No. 17-5, ¶ 13.) However, it held that E.J. was acting as a government agent during the conversation with Hicks and that his threats were coercive. (ECF No. 17-5, ¶ 7.) It remanded the case for the trial court to apply the balancing test required by *State v. Clappes*, 136 Wis. 2d 222, 236, 401 N.W.2d 759 (1985), to determine whether Hicks's inculpatory statements were voluntary. (ECF No. 17-5, ¶ 10.)

On remand, the trial court balanced Hicks's physical characteristics against the pressures E.J. imposed on him. (*See* ECF No. 17-9 at 6.) It concluded "that Hicks's confession was a product of free and unconstrained will." (*See* ECF No. 17-9 at 7 (brackets omitted).) As such, his statements were voluntary and admissible at trial.

On a second appeal to the court of appeals (*Hicks II*), the court applied a "totality of the circumstances test" to determine whether Hicks's statements were voluntary. (ECF No. 17-9, ¶ 13 (citing *State v. Hoppe*, 2003 WI 43, ¶ 37, 261 Wis. 2d 294, 661 N.W.2d 407).)

7

That test involves a balancing of the defendant's personal characteristics against the pressures imposed upon the defendant by law enforcement. The relevant personal characteristics include the defendant's age, education and intelligence, physical and emotional condition, and prior experience with law enforcement. The personal characteristics are balanced against the police pressures and tactics that were used to induce the statements, such as: the length of the questioning; any delay in arraignment; the general conditions under which the statements took place; any excessive physical or psychological pressure brought to bear on the defendant; any inducements, threats, methods or strategies used by the police to compel a response; and whether the defendant was informed of the right to counsel and right against self-incrimination.

(ECF No. 17-9, ¶¶ 13-14 (internal citations omitted.)

The court of appeals cited four facts that it said supported the trial court's finding that Hicks's statements were voluntary. First, because Hicks did not know that E.J. was acting as an agent of the police during the conversation, there was no pressure to comply with police authority, and his previous bad experiences with law enforcement and the absence of a *Miranda* warning were irrelevant. (ECF No. 17-9, ¶¶ 15-16.) Second, Hicks was not in physical proximity to E.J. during the call, and so his "threats of violence carried substantially less coercive effect." (ECF No. 17-9, ¶ 17.) Third, the court of appeals accepted the trial court's implicit finding that Wells's testimony that Hicks did not feel threatened by E.J. was more credible than Hicks's testimony that he did feel threatened. (ECF No. 17-9, ¶ 18.) It also found that the only threat that may have been coercive was E.J.'s threat to tell Hicks's son that Hicks had molested E.J. *Id*. However, according to the court of appeals, that threat did not render Hicks's statements involuntary because the accusation was either baseless, in which

8

case the threat would be less coercive, or it was true, in which case reporting such acts was not "impermissibly coercive in a constitutional sense." (ECF No. 17-9, ¶ 19-20.) And, finally, Hicks was not particularly susceptible to coercive tactics because he had a normal education and intelligence; a strong personality; and no physical, emotional, or substance abuse issues. (ECF No. 17-9, ¶ 21.) Given these facts, the court of appeals found that Hicks's inculpatory statements were voluntary. (ECF No. 17-9, ¶ 21.)

In January 2013, Hicks, represented by counsel, filed a petition for review with the Wisconsin Supreme Court. (ECF No. 17-10.) On March 12, 2013, the Wisconsin Supreme Court denied review. (ECF No. 17-11.) On November 22, 2013, Hicks filed pro se the present petition for a writ of habeas corpus in federal court. (ECF No. 1.)

## ANALYSIS

Hicks's habeas petition alleges that Wells rendered ineffective assistance by not moving to suppress the admission made during the phone conversation and by not objecting to the prosecutor's closing argument. Although ineffective assistance of counsel is a single claim for habeas relief, *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009), Hicks was required to properly present each argument to the state courts. *See Stevens v. McBride,* 489 F.3d 883, 894 (7th Cir. 2007). The court will thus address each argument separately.

9

**A.      Recorded Telephone Conversation**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a state prisoner habeas relief unless the decision of the highest state court to adjudicate the petitioner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Smiley v. Thurmer*, 542 F.3d 574, 580 (7th Cir. 2008) (citing 28 U.S.C. § 2254(d)). Regardless of whether a petitioner's challenge is labelled as a question of pure law under § 2254(d)(1), pure fact under (d)(2), or mixed law and fact, a state court decision may be set aside only if the state court made an unreasonable error. *Ward v. Sternes*, 334 F.3d 696 704 (7th Cir. 2003). This standard is very demanding for petitioners. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

With the AEDPA's deference in mind, the court turns to Hicks's argument that Wells rendered ineffective assistance of counsel. The clearly-established federal law governing ineffective-assistance-of-counsel claims is rooted in *Strickland v. Washington*, 466 U.S. 668 (1984), where the United States Supreme Court articulated a two-prong test. The petitioner "must show both that his lawyer's performance fell below an

Case 2:13-cv-01325-WED   Filed 12/11/15   Page 10 of 21   Document 39

objective standard of reasonableness as measured by prevailing professional norms, and also that the petitioner suffered prejudice as a result of counsel's errors." *Pole v. Randolph,* 570 F.3d 922, 940 (7th Cir. 2009) (citing *Strickland,* 466 U.S. at 688).

### 1. Objectively Unreasonable

To show that Wells acted objectively unreasonably by failing to move to suppress the phone conversation, Hicks must prove that such a motion had merit. *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). With regard to a defendant's inculpatory statements, a motion to suppress is meritorious when the statements were involuntary and coerced by a government actor.[1] *See United States v. Sturdivant*, 796 F.3d 690, 695 (7th Cir. 2015). When assessing whether a statement is voluntary, a court must consider the entirety of the surrounding circumstances in which the statement was made, including the characteristics of the accused and the details of the conversation that resulted in the inculpatory statements. *Id.*

Hicks principally argues that the court of appeals in *Hicks II* unreasonably applied federal law in finding that his admission to E.J. was voluntary. He offers four reasons: the court's decision (1) failed to address E.J.'s threat to tell Hicks's son that Hicks sexually abused E.J.; (2) conflicted with the same court's decision in *Hicks I*; (3) erred by relying on an implicit trial court finding that Wells's testimony was more

---

[1]Hepp does not dispute, and the court finds, that E.J. was acting as a government agent during the conversation. This finding is significant because incriminating statements generally may be suppressed only when elicited by a government instrument or agent. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989).

Case 2:13-cv-01325-WED   Filed 12/11/15   Page 11 of 21   Document 39

credible than Hicks's testimony; and (4) overlooked the psychological pressures imposed on Hicks. (ECF No. 38 at 3-5.) In response, respondent largely recites the court of appeals's reasoning and the highly deferential standard afforded to a state court's application of federal law. (ECF No. 36 at 6-9.)

In reaching its conclusion that Hicks's admission *was* voluntary, the trial court pointed to certain characteristics of Hicks that suggest he is not the type of person susceptible to threats. (ECF No. 17-6 at 47-53.) The trial court also heard Wells testify at the post-trial *Machner* hearing that Hicks admitted to him before the trial that he did *not* feel threatened by E.J. Implicit in the trial court's finding, according to the court of appeals, was that Wells's testimony was more credible than Hicks's assertion that he never said any such thing to Wells.

The problem with Wells's testimony, as Hicks points out (ECF No. 30 at 3), is that it conflicts with Wells's conduct during the trial. Specifically, at trial Wells asked Hicks whether he was threatened by E.J. during the phone call, to which Hicks responded in the affirmative. If Hicks had, in fact, told Wells before the trial that he did *not* feel threatened by E.J. during the phone call, then Wells either (a) expected Hicks to tell the jury that he was not threatened, essentially conceding that he *had* abused E.J., or (b) expected Hicks to perjure himself. If Wells's testimony at the *Machner* hearing was truthful, in doing nothing following Hicks's affirmative response to his question as to whether he felt threatened by E.J. during the phone conversation, Wells appears to have

violated his ethical duty of candor to the court as set forth under Wisconsin's Rules of Professional Conduct. *See* Wis. Sup. Ct. R. 20:3.3.

Moreover, because the question was central to Hicks's defense, it would seem unthinkable that Wells would ask the question without knowing the answer Hicks would give, which undermines Wells's *Machner* hearing testimony. Given the significant and glaring conflicts between Wells's trial conduct and his post-trial testimony, clear and convincing evidence undermines the court of appeals' finding that Wells's testimony was more credible than Hicks's testimony. *See* 28 U.S.C. § 2254(e)(1). Even a partial reliance on an erroneous fact, such has here, goes a long way to showing that the state court decision on the first *Strickland* prong was unreasonable. *See Ben-Yisrayl v. Buss*, 540 F.3d 542, 550 (7th Cir. 2008)(citing *Wiggins*, 539 U.S. at 528).

Without Wells's testimony to the contrary, it is difficult to read the transcript of the phone conversation and find that Hicks's admission was made voluntarily. The transcript shows that Hicks admitted to sexually abusing E.J. only in response to E.J.'s threat to disclose the abuse to Hicks's son if no apology was forthcoming. If Hicks did not apologize, according to E.J., he would never see his son again. "Threats to a suspect's family or children, even if implicit, certainly may render confessions involuntary." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023 (7th Cir. 2006); *see also Lynumn v. Illinois*, 372 U.S. 528, 533 (1963) (finding statements inadmissible after officer's threats to seize suspect's children and welfare benefits). Such a threat arguably

would be more even more alarming to someone like Hicks, who previously had been accused of sexual abuse. So Hicks had to decide: either apologize to E.J. or risk the consequences of E.J. telling Hicks's son about the alleged abuse. Hicks chose to apologize, effectively admitting to the abuse. But the dilemma—confess or else— directly subverts the voluntariness of his confession. *See United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009).

The court finds that Wells's failure to move to suppress the phone conversation was objectively unreasonable. In the habeas context, Hicks has satisfied the first *Strickland* prong.

### 2. Prejudice

The second *Strickland* prong requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must overcome a "strong presumption" that the proceedings were reliable. *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (quoting *Smith v. Robbins*, 528 U.S. 259, 286 (2000).) Because none of the state courts addressed whether Wells's failure to object was prejudicial, the second *Strickland* prong is reviewed *de novo. Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Hicks's admission to E.J. was only a portion of the evidence offered by the prosecutor. E.J. testified in detail about sexual abuse by Hicks, providing numerous accounts of how, when, and where Hicks abused him. (*See, e.g.*, ECF No. 17-13 at 147-150; ECF No. 17-14 at 1-6.) Two additional witnesses testified that Hicks had previously molested them as children. They, too, provided vivid details of sexual abuse, supporting E.J.'s testimony. (ECF No. 17-13 at 114-15, 134-35.) Hicks's ex-wife testified that Hicks admitted to her that he had abused E.J. (ECF No. 17-4 at 69-70.) Given this evidence, the court cannot say that there is a reasonable probability that, had the phone conversation been suppressed, the jury would have found Hicks not guilty.

Therefore, Hicks was not prejudiced by Wells's failure to move to suppress the phone conversation. As such, Hicks's ineffective-assistance-of-counsel argument based on the failure to move to suppress the phone conversation does not entitle him to habeas relief.

**B.    Closing Argument**

Hicks's second argument asserts that Wells was ineffective for not objecting to the prosecutor's allegedly improper closing argument. (ECF No. 1 at 17-19.) According to Hicks, the prosecutor suggested that the jury should punish Hicks for not having been adequately punished in his prior sexual abuse case. The respondent retorts that, even if this argument had merit, Hicks failed to present it to the Wisconsin Supreme

Court and, therefore, it is procedurally defaulted and must be dismissed. (ECF No. 36 at 11-14.)

Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c). A prisoner exhausts a claim by fairly presenting both its operative facts and controlling law to every level of state court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citing *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)). When a petitioner proceeds through Wisconsin state courts without exhausting a claim, that claim is procedurally defaulted. *Blintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005) (reviewing Wisconsin's appellate procedure) (citing *Moore v. Casperson*, 345 F.3d 474, 486 (7th Cir. 2003)). A procedurally defaulted claim must be dismissed unless the petitioner shows cause for the default and prejudice attributable thereto, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), or that dismissal would result in a miscarriage of justice, *Schlup v. Delo*, 513 U.S. 298, 315 (1995).

In *Ellsworth v. Levenhagen*, the Court of Appeals for the Seventh Circuit articulated four factors to guide the inquiry into whether a claim was fairly presented to a state court. 248 F.3d 634, 639 (7th Cir. 2001). These factors assess whether the petitioner "(1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claims in terms particular to a specific constitutional right; or (4) alleged a

pattern of facts well within the mainstream of constitutional litigation." *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009) (citing *Ellsworth*, 248 F.3d at 639).

To determine whether Hicks fairly presented his argument that Wells was ineffective by not objecting to the government's closing argument, the court must examine Hicks's petition for review to the Wisconsin Supreme Court. *See Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). In the section entitled "Issues Presented," Hicks enumerated four questions. (ECF No. 17-10 at 4-5.) The first two relate to the phone call discussed above. The third and fourth issues relate to the prosecutor's allegedly improper closing argument:

> **ISSUE 3**: "Did the prosecutor's improper closing argument asking the jury to consider the propriety of Hicks's *Alford* plea on a previous case entitle Hicks to a new trial in the interest of justice because the real controversy was not fully tried?"
>
> [Summarizing lower courts' decisions]
>
> **ISSUE 4**: Did trial counsel's failure to object to the prosecutor's improper closing arguments constitute ineffective assistance of counsel?
>
> [Summarizing lower courts' decisions]

(ECF No. 17-10 at 4-5.) Thus, at this point in the petition, it certainly appeared as if Hicks was going to pursue the argument at hand. The problem is, he didn't.

In the "Argument" section of Hicks's petition are three subheadings, one for each of the first three issues presented in the petition. (ECF No. 17-10 at 21-27.) The third argument in Hicks's petition is that the prosecutor's closing argument asking the jury to

consider the propriety of Hicks's prior plea bargain prevented the real controversy from being fully tried, entitling Hicks to a new trial. Absent from the petition is any discussion of the fourth issue presented—whether Wells was ineffective by not objecting to the prosecutor's closing argument. (ECF No. 1 at 17-19.)

A claim that the prosecutor's closing argument entitled Hicks "to a new trial in the interest of justice" (ECF No. 17-10 at 4) is separate and independent from a claim that Wells was ineffective under the Sixth Amendment for not objecting to the closing argument. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues."). The former claim asserts an issue of state law, *see* Wis. Stat. § 751.06, for which a writ of habeas corpus cannot provide redress, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The claim of ineffective assistance of counsel raises a question of federal constitutional law for which habeas relief is available. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Advancing the former claim did not exhaust the latter.

Hicks acknowledges that his federal claim "could possibly be construed as insufficiently argued" but maintains that his petition for review adequately referenced the federal claim. (ECF No. 38 at 6.) A "passing reference" to a constitutional violation is not enough to fairly present a claim. *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) (quoting *Fortini v. Murphy*, 257 F.3d 39, 44 (1st Cir. 2001)). A petitioner must assert

Case 2:13-cv-01325-WED   Filed 12/11/15   Page 18 of 21   Document 39

his claim in a manner that alerts the state court to "the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)); *see also Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).

Nothing in Hicks's petition discussing the prosecutor's improper closing argument suggests that Hicks was asserting a federal constitutional claim for ineffective assistance of counsel. Hicks did not cite a provision of the federal constitution or any federal case law discussing ineffective assistance of counsel. Nor did he cite any state case law applying the federal constitutional right. Indeed, the three Wisconsin cases cited by Hicks address the state law issue of whether the real controversy was fully tried. (ECF No. 17-10 at 25 (citing *State v. Bvocik*, 2010 WI App 49, 781 N.W.2d 719; *State v. Weiss*, 2008 WI App 72, 312 Wis. 2d 382, 752 N.W.2d 372; *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995).) Nor did Hicks frame his argument in terms so particular as to raise a specific constitutional right or assert a pattern of facts that was well within the mainstream of constitutional litigation. If anything, the argument section of Hicks's petition indicates that Wells acted reasonably. (*See* ECF No. 17 at 26.)

Thus, the fourth "Issue Presented" is all that may have alerted the Wisconsin Supreme Court to Hicks's federal claim. But this reference alone did not fairly present Hicks's federal claim. *See, e.g., Whitfield v. Sternes*, 66 F. App'x 40, 43 (7th Cir. 2003) ("The subheadings of Whitfield's filings in state court mentioned 'due process' and the 'right

to a fair trial.' Whitfield, however, did not address these concepts in the text that followed the subheadings." (unpublished)); *see also U.S. ex rel. Blottiaux v. McAdory*, 264 F. Supp. 2d 704, 708 (N.D. Ill. 2003). Without more, Hicks procedurally defaulted his second argument.

Procedurally defaulted claims must be dismissed with prejudice except where the petitioner shows cause for the default and prejudice attributable thereto, *Edwards*, 529 U.S. at 451**,** or that dismissal would result in a miscarriage of justice, *Schlup*, 513 U.S. at 315. Respondent's answer and response brief note that Hicks did not raise the procedural default defense in his briefs. (ECF No. 14 at 4-5; ECF No. 36 at 14.) In what appears to be a sur-reply brief, Hicks asserts only that "if a technical forfeiture occurred, the court should exercise its discretion to address the merits." (ECF No. 38 at 6.) Hicks then quoted an immaterial Wisconsin Supreme Court case without further explanation. (ECF No. 38 at 6-7 (quoting *State v. Ndina*, 2009 WI 21, 315 Wis. 653, 761 N.W.2d 612).) Accordingly, the court finds that Hicks has shown neither cause and prejudice nor a miscarriage of justice to avoid the consequences of procedural default. Hicks's second argument for ineffective assistance of counsel must be dismissed.

## CERTIFICATE OF APPEALABILITY

Before a state prisoner may appeal a district court decision denying a petition for a writ of habeas corpus, he must receive a certificate of appealability. 28 U.S.C. § 2253(c). "Where a district court has rejected the constitutional claims on the merits, the

Case 2:13-cv-01325-WED   Filed 12/11/15   Page 20 of 21   Document 39

showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the reasons stated above, the court will issue a certificate of appealability on Hicks's claim for ineffective assistance of counsel. *See* Rule 11 of the Rules Governing Section 2254 Cases.

**IT IS THEREFORE ORDERED** that petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) is **dismissed**. The clerk of court shall enter judgement accordingly.

Dated at Milwaukee, Wisconsin this 11th day of December, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge